Good morning, Illinois Appellate Court, First District Court is now in session. The second, the third division, the Honorable Justice Margaret McBride presiding, case number 22-0525, Darren Van Buren v. City of Chicago. Good morning. Before we begin, I'd like to introduce the panel members on this case as the, as it was just announced, I will be presiding over this case. My name again is Margaret McBride and with me on this appeal are Justice Jesse Reyes and Justice Deborah Walker. Morning. I will first explain the procedures to the attorneys and then I will ask you both to identify yourselves for the record for purposes of the recording. So what we're going to do today is allow each side about 10 minutes of uninterrupted time for oral argument. In fact, I'm getting my little timer on, but we normally, you know, don't cut people off. And I hope we won't have to do that, but you'll get about 10 minutes of uninterrupted time to present oral. And from that, the appellant can save some time out for rebuttal. After the 10 minute presentation, the justices, excuse me, will then have questions. And the same procedure will apply to the appellee. Excuse me. I apologize. So there'll be 10 minutes of uninterrupted time for the appellee. And then the justices will have questions. And then of course, we will return to appellant if there is rebuttal time that you wish to use. So with that, I would ask both attorneys now to identify yourselves for the record. For the appellant, plaintiff Darren Van Buren, attorney Bryden Brown. Good morning, Mr. Brown. Good morning. Good morning. Jane Chapman on behalf of the defendants. Good morning, Ms. Chapman. All right. Any questions before we proceed, do you both understand? Mr. Brown, we're going to start with you, obviously, as appellant and give you about 10 minutes for your presentation. And if you want to let us know now, would you like to save some time for rebuttal? Justices, I would like to save time for rebuttal. Do I have to tell you how much time I'll need a rebuttal? No. No, that's perfectly fine. All right. So with that, we will begin. Mr. Brown. May it please the court? Counsel. Thank you. Darren Van Buren sued the city of Chicago and officers Nathan Poole and LeVar King for malicious prosecution. The lawsuit was dismissed. Well, subsequent to discovery and depositions, there was a motion for summary judgment that was filed by the defendants and the lawsuit was dismissed on the defendant's motion for summary judgment. There are two major cases that the appellant believes is controlling or that the court should consider. We will call the first case of Beamon 1, and that is Beamon B. Freshmeyer. That is a 2019 case from the Illinois Supreme Court. And then we'll call the second one, well, the appellant will call the second one Beamon 2, and that is Beamon B. Freshmeyer from the Illinois Supreme Court. And that is a 2021 case. These cases make it clear that in order to succeed on a claim for malicious prosecution, there must be five elements that are met. The appellant strongly takes the position that all five elements were met and that the matter should not have been dismissed on a motion for summary judgment. Those five elements are the commencement and continuance of a prosecution, the termination of a prosecution in favor of the plaintiff, the absence of probable cause, the presence of malice, and then damages. At the trial court, the trial court judge made a determination that there were material fact issues with respect to three of the elements. Those elements were the commencement and continuance of a prosecution, the termination in favor of the plaintiff, and then also the presence of damages, considering that the plaintiff was jailed for 19 months based on with whether or not there was the absence of probable cause, and then also whether or not there was a presence of malice. And both of those issues are, we believe, go directly to Beamon 1 and Beamon 2, and we'll discuss those further this morning. For the plaintiff appellant, it's obvious that our position that is obviously that we sufficiently pled each of those factors in the complaint and that the matter should not have been dismissed on a summary judgment. One of the issues that the appellant took or believes that the trial court aired is that one of the things that Beamon says is that the court must construe the pleadings, the depositions, the admissions, and the affidavits strictly against the movement and liberally in favor of the opponent, and that's not what's placed at the trial court level. The trial court and the plaintiff are not supposed to be a trial, evidentiary trial issue, or a preponderance issue, and that's not the standard at the summary judgment stage. And Illinois Supreme Court has been clear about that. If there are reasonable inferences that can be made or conclusions that can be made from the evidence or from the depositions, then it must be construed in favor of the plaintiff, and that did not take place, and that is obvious based on the trial court's oral recitation of her ruling that that did not take place, and that is not the standard or the correct standard that was applied at the trial court level. And even in the appellee's responsibility, they're treating this like a trial. They're not applying the correct standard or looking at this case the way that the Illinois Supreme Court has demanded or mandated the lens that has been mandated for applying or looking at these cases. Going to Beaman 1, and I just want to kind of explain some of the issues or some of the, I guess, the glaring or relevant issues that we think come from Beaman 1 and Beaman 2. Starting with Beaman 1 with respect to the commencement and continuance of a prosecution, what they talked about is in determining whether or not defendant officers played a role in the commencement and continuance of a prosecution, and there were tests that they spoke of in the significant role test. And what they said is this significant role test extends to all persons, whether or not it's the advice and cooperation, pressure or misstatement. And so what they said is you could not be, a person could not be absolved of responsibilities simply because a prosecutor moved forward with the charges. Anybody that played a significant role in the prosecution or arrest of the plaintiff is subject to liability, but specifically as it goes to the defendant officers. And that's what, or who has that issue in this case. And certainly, I don't think it's without any dispute that the defendant officers played a significant role as they were the lead detective. They would be only, basically only detectives or law enforcement involved. And it was based on their work and their testimony, specifically Officer Poole's testimony before the grand jury and the reports that were drawn that were the subject or what led to the prosecution and incarceration of Darren Van Buren for almost five days short of 19 months. Beeman too spoke about, and this was from 2021 because the Beeman One case was reversed and remanded and then ultimately found its way back up before the Illinois Supreme Court two years later. Beeman too talked about some of the issues with respect to malice and probable cause in addition to what actually is a favorable termination. And what they talked about in Beeman too was that bad faith can infer malice. And then we're an investigation, excuse me, investigative team conducts a bad faith or incomplete investigation that malice can be inferred from that. And again, as I've already brought to the court's attention is that it's the question is whether or not a reasonable inference can be drawn. And certainly there's enough here that, and we briefed it, we mentioned in our brief to determine in some of the categories that were mentioned in Beeman too, bad faith investigation. I think we have enough there to draw a reasonable inference, concealment of exculpatory evidence, misleading information before the grand jury, certainly here in this instance, Officer Poole testified before the grand jury, testified about this scar that was on Darren Van Buren's head and the scar that was on the video at the grand jury, whether or not the testimony was necessarily perjury. I think a reasonable inference can be drawn from the testimony that it wasn't genuine. Certainly the grand jury believed that Officer Poole looked at the video and confirmed that the video had this scar on the Darren Van Buren had a scar matching the scar on the video, even though it was crafted in a way to, I guess, get around perjury. It still was offered to the grand jury in a way that's misleading, normally providing bad information to the prosecutor. So I think the two of the problems, the bad faith investigation and the misleading information, certainly a reasonable inference can be drawn based on the facts that were offered during the deposition. Some of those facts that we talked about were quite frankly that, and we believe these are undisputed based on the testimony, is that Detective Poole did not verify what Olivette was told him concerning the surveillance video. He didn't verify whether or not Darren Van Buren had a scar on his head. Detective Poole didn't verify any of the witnesses or less identifying features that led him to Darren Van Buren. He didn't verify whether or not Darren Van Buren matched the description of the shooter's head, fingers, height, or scars. Detective Poole didn't verify whether or not the shooter in the video had a scar on his head. I believe those actions were egregious, grossly negligent, and far outside the bounds of good faith. And Beeman, too, outlined that such actions or such actions, as long as a rational juror could draw a reasonable inference from Detective Poole's conduct, that that is a determination for the trier of fact to make whether or not this was a bad faith investigation or whether or not there was malice or probable cause, and that's for a jury to decide and not to be decided at summary judgment. The same thing with Detective LeVar King. In line with the egregious conduct of Detective Poole, he also didn't verify whether or not Darren Van Buren's head had a scar on his head. Detective King didn't verify whether or not Darren Van Buren had small hands. Detective King did not verify if Darren Van Buren had a limp that matched the limp in the surveillance video. In fact, when Detective King was asked about it, he said absolutely not that he didn't verify it. Detective King testified that he didn't read all of the reports. Detective King testified that he didn't verify whether or not an occurrence witness was a security guard, and it's important because in the appellee's brief, they keep calling this person a security guard when in fact he was someone who was not a security guard who was in the restaurant selling illegal CDs. Mr. Brown, I want to let you know you've used up about nine minutes already, so if you want to save some time for rebuttal, try to sum it up now. I would like to save some time for rebuttal. I just want to go to the issue of malice and Beaman says is that where two competing inferences may be drawn, circumstantial evidence is sufficient to infer malice. It's generally recognized that malice is incapable of positive direct proof and necessarily relies on inferences and deductions, and so we save the rest for rebuttal. All right. All right. With that, Justice Walker, do you have some questions for Mr. Brown? Yes. Mr. Brown, it sounds as though you think that it's impossible to obtain a summary judgment on a malicious prosecution case, that it always has to go to a jury. Is that your position? It is not. Okay, and how about this question? You've relied a lot on Beaman today, and isn't it true that a grand jury indictment is really conclusive evidence of probable cause for purposes of a malicious prosecution claim? Well, yes and no. As far as with criminal procedure, yes, but as far as when analyzing a malicious prosecution, no. I think what Beaman says is, Beaman addressed that very issue, and Beaman said that an indictment alone is not sufficient to establish probable cause for purposes of a malicious prosecution claim, and so I think that is one of the issues that was in that regard. In that regard, I would say no, because this was one of the issues that was addressed by Beaman too. Thank you, Mr. Brown. Justice Reyes. Yes, I have a couple questions. Counsel, do you know why Mr. Van Buren's head wasn't totally or fully shaved, and it was only just the top? I don't know. I believe Mr. Van Buren's head was shaved in compliance with the court order. I disagree with the police position that the shaving of Darren Van Buren's head was not sufficiently done. Certainly, the prosecutor got a court order, a valid court order, from the judge at the trial court to have his head shaved. If they weren't satisfied with his head being shaved, certainly the court could have ordered the rest of his head shaved. Certainly, the court could have had clippers brought to the courtroom, and they could have shaved his head right there. So, the idea that his entire head wasn't shaved the way that the prosecutors thought was a way that would be sufficient, I think is such a conclusion would defy logic. I think the prosecutors and the judge were certainly more competent and smart enough to not let that be an issue that the head wasn't shaved to their liking. Okay. So, we have Edwards and Webster both identified Mr. Van Buren as the shooter. Isn't that enough to satisfy a probable causer? Not by itself. I think it's important that the court consider that initially, Michael Webster did not say it was Darren Van Buren. So, I know in the appellee's brief, they said they would say Darren Van Buren. It was said that it was Olive Edwards' boyfriend. Second, in the initial report, what the initial responding officer said, they didn't have any idea who it was. And it was later that Michael Webster said it was Olive Edwards' boyfriend. But initially, when the officer came, he didn't say that. He didn't say he knew it was the boyfriend of Darren Van Buren. But second, Olive Edwards never saw the shooting. She was not a witness at all to the shooting. There was only one eyewitness, and that was Michael Webster. Upon being prompted and shown this video, that is where Olive Edwards saying that it was Darren Van Buren. But she never saw the actual shooting. She never actually saw the shooter. The only thing that she saw was the video that the detective showed her, which as a matter of irony, the detective said they never really looked at the video, but they showed it to her. But based on that video, didn't she state that because of the body movement, the frame, the body frame and things of that nature, that that's how she was able to identify Mr. Van Buren as the shooter from the video? That was said. And so perhaps that is probable cause to investigate Darren Van Buren, but simply because a witness says that they believe that to be Darren Van Buren in a place where his face is not shown, his entire body is covered, his face is covered. And so the question is, do the detectives have a duty and is it reckless or grossly negligent for them not to verify what Olive Edwards told them? And that's what they didn't do. If this was a case where Darren Van Buren's on the screen and someone sees his face, no one saw his face. And so if all we have are these characteristics that are being offered, is it grossly negligent? Is it reckless? And can a reasonable inference be drawn that this was a bad faith investigation if the law enforcement don't verify any of these characteristics? And they admittedly do not. They don't verify his height. They don't verify the scar. They don't even verify whether or not they looked on his head for the scar or whether or not there was a scar on the video. They don't verify whether he has this limpness in the video. They don't verify anything. And to do that, I think a rational juror could draw a reasonable inference that this was a bad faith investigation. And further, they presented this case before the grand jury as if they did. Okay, thank you. No further questions. I have just a couple of brief ones. First of all, Mr. Brown, you agree this is our de novo review. De novo. We're not bound by anything that the trial court found. Would you agree? Yes. So we're going to analyze if we choose every element. And it's your burden, is it not to show the lack of probable cause? Is that right? That's your burden. You had to come forth with evidence of a lack of probable cause as the proponent, the plaintiff of the action. That is correct. Okay. And it's also correct that if you do not establish even one of the five elements, then your action falls. Is that true? That is correct. Okay. So what case or what factual scenario would you explain establishes a lack of probable cause? But try to be brief. How did you show a lack? So the case would be the Beamon 2 case. And so what Beamon speaks to is gross negligence. And a mistake or error that is not grossly negligent won't affect probable cause. And so what we have here are grossly negligent investigations or grossly negligent actions on behalf of the defendants. And one of the things Beamon says is the record must be strictly construed against the moving. In fact, permitting competing inferences will allow the complaint or the case to survive. And that's what we have. The gross negligence of the defendant officers, which is undisputed by their own admission, shows the lack of probable cause. Okay. Let me ask you this as well. Was there a third person that was at the shooting incident? Yes. Who was that? That was another employee of the Jerk Villip restaurant. Was that a woman or a man? That was also a woman. And did she add anything to the identification process? The only person that my recollection sort of tells me that said they actually saw the shooting was Michael Webster. Okay. And then in addition to the identifications of Webster and I believe it was Miss Edwards, there was evidence presented. Was there not that the plaintiff here, Mr. Van Buren, owned a white Cadillac? That's correct. But there was never any white Cadillac saw seen at the shooting. No, no. But was it Miss Edwards who said he owned a Cadillac, a white Cadillac? I believe it was Michael Webster that said he owned a white Cadillac. Did she confirm that at all? Or was she the witness that confirmed he had a gun, 38 or something? Right. She confirmed that he had owned a gun or she had saw him with a gun, but there was never any real physical confirmation that the gun that was seen in the video was similar to any gun that he owned. I know that there was a receipt for a gun, but the facts around the receipt and the description of the gun conflict, at least our position is certainly conflict with what's on the video. One of the things your opponent is going to argue is that you didn't establish one of the elements relating to probable cause. She's going to argue that there were several elements missing here. You're saying there's sufficient evidence to go to a jury on each one? Yes, the elements are, with respect to malice. Well, here I know, I know what I wanted to specifically get to, the nolly. The nolly was introduced and her counsel's response is that just the simple nolly price does not amount to establishing the elements here. And so that again goes to Beeman 2. And what Beeman 2 says that favorable termination in favor of the accused, unless it's done for reasons inconsistent with innocence, are sufficient to survive certainly summary judgment as it pertains to whether or not it was terminated in favor. And what they talked about were procedural issues, whereas if there was some kind of motion to dismiss or some kind of procedural matter that didn't have anything to do with the case, and that's not what we had here. But you're saying that the nolly alone is evidence of a favorable dismissal of a prosecution? I'm saying it and I'm also saying that the Illinois Supreme Court says it as well, and the counsel in Beeman 2. All right. Any further questions of the other panel members at this time? No, no questions. All right. Mr. Brown, we'll permit you some time for rebuttal, but now we're going to hear from Ms. Chapman. Ms. Chapman, you may proceed. May it please the court. The circuit court correctly held that Mr. Van Buren's malicious prosecution claim fails in multiple respects. We discussed four of those in our brief. This morning, I'd like to focus on three. First, I'll explain that the detective's actions were supported by clear probable cause. I will then explain why summary judgment is also proper on the first two elements, the commensal continue element and the favorable termination element. And unless this court has questions, I will rest on our brief as to the remaining element malice. Now, turning to probable cause, as this court is well aware, probable cause is an absolute bar to a malicious prosecution claim. And there's no question that there was probable cause to prosecute Mr. Van Buren. We have not one, but two witnesses who positively identified Mr. Van Buren as the shooter, Michael Webster and Olive Edwards. And those identifications were supported by a wealth corroborating evidence. Moreover, the state's attorney, the judge at Mr. Van Buren's preliminary hearing and the grand jury that indicted him all found probable cause. Now, the law is clear that the positive identification of a suspect by a single witness is sufficient to convict, let alone establish probable cause. And here again, we have two. Just minutes after the shooting, Michael Webster was in the restaurant during the entire shooting. We know this because we can see him on the surveillance camera. We can see him watch the shooter walk in. We can see him duck out of the way as the shooter turns and shoots at the crowd. We can see him mere feet from the shooter. And we can see him just minutes later on the officer's body camera has come up to Olive Edwards and say, hey, that was your dude. I know it was him. We can hear Olive Edwards tell the police officers, Darren Van Buren, and begin to spell his name before repeating it twice more. This is all on the video. So this is undisputed. Moreover, we can see Mr. Webster then telling the officers on body camera exactly what he saw describing how the shooter walked in, went straight to the counter, looked into the kitchen, shot into the kitchen door before shooting at them. And in fact, Mr. Webster was so certain that this individual was Mr. Van Buren that he feared for his own life in that time because he knew Mr. Van Buren would recognize him and he thought they made eye contact. And again, this all happened before either of the detectives were assigned to the case, just minutes after the shooting. And when the detectives were assigned to the case, Mr. Webster gave that same account again and again. And he gave the same account again on a videotaped recording in his interview with the assistant state's attorney. Mr. Webster's identification alone was probable cause, but the detectives had more. They also had Olive Edwards' identification. Ms. Edwards came in and, as my opposing counsel mentioned, watched the surveillance video. And she identified him based on Yass's scar, which I will address in a moment. But she also identified him based on his limp, based on the way he moved, based on various features she recognized from having dated him, describing in very personal terms the way his fingers looked, the way his head looked. She said, I recognize that gun. She said, I've seen that gun multiple times before. And she said, I recognize the way in which he shot the gun and went on to describe in detail when she had seen Mr. Van Buren shoot that gun. And by the way, during these Yes, she has seen my gun. So that in itself was probable cause. And by the way, that gun, which we do have receipts of, while the detectives went and searched the white Cadillac that both Mr. Webster and Ms. Edwards said that he owned, they found six live rounds of ammunition and an empty gun case. They never found a gun, but those matched exactly Ms. Edwards' description. Further corroborating evidence. And speaking of further corroborating evidence, we have all the stuff Ms. Edwards described about her relationship with Mr. Van Buren. We know that Ms. Edwards said that he was violent when drinking. We know that she called the police on him multiple times, a fact that Mr. Van Buren conceded in his deposition in this case. We know that he threatened to kill her if she left him, which by the way, detectives have every right to believe what is considered an inherently reliable victim. That is established in the case law. There is nothing wrong with the detectives believing this woman in coming. And also she said this multiple times, not just to the detectives, but to the assistant state's attorney, and also testified to this at his preliminary hearing before the judge. So they knew all this and they knew that he threatened to kill her if she broke up with him, and that she had in fact broken up with him recently. They knew that she had last seen him that morning when he'd driven up to the bus stop while she was on her way to work at the restaurant and harassed her about getting back together. And she said, no, I'm not getting back together, which prompted him to drive off in anger. So given all of this, of course, the detectives had reasonable grounds to believe that Mr. Van Buren was the shooter. Of course they did. And they weren't the only ones. So too did the assistant state's attorney who reviewed all of this evidence, watched the surveillance video, independently interviewed the other victim, Brenda Wilson, who was not an employee, just to correct the record, she was actually a patron at the restaurant waiting in line. And you can see her in the video. He listened to her. He talked with Mr. Webster. He talked with Ms. Edwards. He even paused and said, actually, I don't want to approve charges yet. I would like you detectives to go and search his vehicle. I would like you to go check for DNA evidence, which they did. So this is not just a rubber stamp. This is an assistant state's attorney carefully reviewing the evidence on his own. And once the detectives began those processes, he said, okay, I'm comfortable. I think we have sufficient probable cause. I approve charges. And that's something that he has to do by law. These detectives cannot move forward with felony charges without the felony review unit's approval. Not only did the state's attorney find probable cause, but so too, again, did the judge at his preliminary hearing who heard that testimony. And in light of that said, yes, probable cause, he'd be held without bail. And finally, so too did the grand jury, which as this court noted, that grand jury indictment in and of itself establishes at least a prima facie case of probable cause. And opposing counsel mentions Beaman one and Beaman two. What the Supreme Court said in Beaman is, yes, a grand jury indictment establishes prima facie probable cause, which may be rebutted. It may. But what do we need to rebut it? You need evidence of some kind of improper or fraudulent actions on the part of the detectives. And there has been no such evidence adduced. And again, as opposing counsel notes, this case has gone through discovery. There have been depositions. And throughout that entire time, nothing came forth that in any way impugned the credibility, the goodwill, the good job that these detectives did. So to say that they did not verify anything is completely belied by the record. They went, they checked his car. They checked all these other features that said, yes, this very much matches with each of these witnesses. And by the way, the other person, Brenda Wilson, she did see the shooting. And she said, I saw a big silver object. I saw a man go and look into the window, look at the kitchen, et cetera. So all very supportive. All that to say, there can be no question that there was probable cause. And for that reason alone, summary judgment was proper. But as I mentioned before, I'd like to discuss two other reasons why summary judgment was proper. You have about two minutes to do that, just so you know. Okay. I'll try to do one for each. All right. Commence and continue element. So Beeman did clarify the correct approach in that it said, what matters is whether the detectives proximately caused the commencement or continuance of the proceedings. Because detectives cannot, as a matter of law, commence or continue, that has to again be done by a prosecutor. The operative question is whether they played a significant role by interfering with the independent judgment of the prosecutor. We get that kind of evidence by seeing some kind of bad faith, bad job. And again, despite everything opposing counsel says, there really is no such evidence here. Everything that they investigated, they presented to the ASA. At no point did the ASA say, what about this scar? I'd like you to look at it. And why did he not say that? Because the scar was a tiny factor among many, many other things that established probable cause. So there was no such thwarting of the independent judgment of the prosecutor. They did everything by the books. Everything was presented. They played a minimal role. Why did the court below say that there wasn't? Because they investigated and signed complaints, which the court said might constitute participation. But again, that's not the legal standard. The legal standard is significant role by thwarting the independent judgment, and there is no such thing here. Finally, as to termination, favorable termination, a bare nollie pross is absolutely not sufficient to meet the burden to establish that the termination of the proceedings were in the defendant's favor. That burden was on Mr. Van Buren. He cannot simply just point to the fact that there is a bare nollie pross because what we know is that there are many reasons a case might be dismissed by nollie pross. There might be insufficient resources in the prosecutor's office. There might be difficulty obtaining witnesses. There might be difficulty even getting the detectives availability to testify. That was something that Mr. Van Buren needed to put forward, and we have nothing, nothing. And so we cannot sit here now with no record before us, despite the opportunity to develop such a record and say, yes, there is any grounds on which we can infer there was a favorable termination here. So for that reason as well, we ask this court to affirm judgment in favor of defendants. All right. Thank you, Ms. Chapman. Justice Walker, any questions at this time? No questions. Thank you. Justice Reyes? Yes, I have a couple questions here. It's my understanding from reading the briefs that the nollie pross, what they're raising is not so much the nollie pross itself, but the timing as to when it occurred. It appears their argument is that because of the timing being right before the trial that the charges were nollie pross, that shows or at least indicates that it's a malicious prosecution. We're left with pure speculation on that front. And like, yes, that might potentially be reason, but they need to put forth some affirmative evidence to withstand summary judgment. You cannot speculate as to that. I went back through the docket and I saw, well, let's look at the they were also looking to obtain witnesses. So that's on that SWCC from the Illinois Supreme Court very much said, you need testimony or something. You cannot just look at the circumstances. And the seventh circuit interpreting Illinois law confronted this exact question in London, 2020. And in that case, and if you'd like me to provide the site, I can look it up for you. But in that case, the case was decided in your brief. I don't think you should be citing it now. It's not really appropriate for Mr. Brown to be able to rebut absolutely. Well, all that to say, there are many, many reasons why the case could have been nollie prossed and it was on Mr. Van Buren to put forth something rather than to speculate as to why we can all come up with reasons. That's not enough to withstand summary judgment. Okay. And regarding the scar, you indicated that it was a tiny factor, but yet it seems that the trial court felt it was significant enough of a factor that they had his head shaved. So that it is, it seems like it's more than just a tiny factor that actually is a substantial factor in this case. Well, I mean, again, we're on de novo review here. So I look at it as what, I mean, we could set aside the scar and say they shaved, imagine they shaved his entire head and they find no scar that still doesn't undermine the probable cause that was already established by Michael Webster's identification or the probable cause established by all of the other corroborating evidence with regard to their relationship. All it tells us is that Ms. Edwards was mistaken about her ex-boyfriend having a scar. It doesn't tell us that she was mistaken about having a gun because he himself acknowledges that. It doesn't tell us that she was mistaken about working in a restaurant and him dropping them off and knowing everyone there because everyone concedes that. So the reason it's not a big deal is because it in no way impugns the other evidence that very, very corroborates her identification. It absolutely has no bearing on Mr. Webster's identification. And so that's why we maintain it really is just one small factor. Okay. And following up on the appellant's brief, why wasn't it grossly negligent for the officers not to feel the top of his head for the scar? Well, I think that my previous response also answers this. They only saw this as something that was indicative of her relationship with him. She had said, I used to feel his head. This is a very personal thing. There are other factors. Each of the detectives, to correct the record again, they did view the video. They just didn't see a scar. So to them, that's not what was motivating their probable cause analysis. They were saying she listed a lot of stuff. She consistently listed a lot of stuff. She our opposing counsel noticed that they didn't check how the size of his hands. These are all what's the word? Not objective, very subjective descriptions. And so scar or no scar, it would have been negligent on the part of the officers, the detectives here to have not proceeded because of a scar or not a scar. It just wasn't incumbent on them to check that because that wasn't really what was motivating the prosecution. Okay. And as I understand it, your position is not so much that the officers might have erred or made a mistake, but that it wasn't grossly negligent. Is that correct? Their conduct during the investigation? I would go so far as to say they weren't negligent. I think there's no question they weren't grossly negligent. That's the operative question, but we maintain that they actually really did dot their I's and T's and presented everything. And we're very transparent with the state's attorney saying, what more do you need from us? And he said, I need this, this, and this being searched the car, get DNA. And they did all of that. Great. Thank you. No further questions at this time. Ms. Chapman, did Ms. Edwards ever pinpoint at any time where this scar on his head was? She gave two different descriptions. So consistently as of when she at least was interviewed by the state's attorney and then testified at the preliminary hearing, she indicated that it was on the back upper left. So you could see in the video of her interview with the assistant state's attorney, she motions it's back here. I say she gave different descriptions because in her initial, at least the written reports with the detectives, it says it was like top of the head. Did she say this was a large scar or did she say it was just a scar? He also said he had a very unique haircut design, which I mean, I only bring up because looking at someone's head, I know when I look at someone's head and they have different cuts in their haircut, I personally can't tell if something's a scar or a haircut. But is there any case you're aware of that said that a discrepancy in the description demonstrates the lack of probable cause? No, to the contrary. There's actually a lot of case law on this. So it's showing that even, for example, I believe it was People v. Slim where a father of a defendant gave one height for his son and the father's girlfriend gave a height that was five inches off. And the court said these discrepancies, unless they were to render the identification completely incredible, it's just not enough to undermine probable cause. We have no such incredible discrepancies here, just mere discrepancies are not enough to undermine that. Do you agree with your opposing counsel, Mr. Brown's suggestion, that there's some sort of nuanced difference between probable cause to make an arrest for criminal charges and probable cause for purposes of malicious prosecution, which actually requires not that there be probable cause, but that the proponent establish the lack of probable cause? Is there a difference? Is probable cause different for malicious prosecution than it is for a criminal action? The only way in which it's different is if that probable cause is subsequently undermined. I would argue, so I would say first, my first answer is no, it's not different. It's the same. The reason I give that caveat is because let's say that the officers, if Mr. Van Vieren came and said, I have a receipt that shows I was in Texas during this two weeks later, that undermines it. And that does come into the malicious prosecution analysis, because at that point, that would get to the continuance element. And that could undermine it. But no, these are the same. We look at the time of arrest, what was it reasonable for these officers, these detectives to have known? All right. Well, I don't have any other questions. Any questions by the other panel members? No. All right. Mr. Brown, before you begin, I'm going to advise you that you've got two minutes. We have another case that we have to begin at 945. So please use your time wisely, but it's beginning now. So we'll go quick. One, throughout the appellee's recitation, they were offering facts that are, in fact, in dispute. These aren't undisputed facts. In fact, most of that stuff, none of the testimony, none of the argument that was offered was provided in the form of any deposition testimony. Everything that the plaintiff appellant offered is documented testimony from the defendants. The allegations and the accusations made by the appellee have not been verified, have not been testified to, and they speak of speculation. Everything they said is mere speculation. What we provided in our brief, both at the trial court level and here at the appellate court, is factual deposition testimony that is not in dispute. We dispute everything that they said. It's also in dispute that this matter was dismissed via Nally Cross. Darren Van Buren testified to it. He was there in person in court because they learned that he didn't have the scar on his head, he didn't match the shooter, the police officers didn't do it. It wasn't a small thing. It was the reason that the case was dismissed. It was the reason that he should have never been arrested. And simply because a police officer received a description from someone, that is not enough. You have to verify. If a police officer gets a call that someone committed a robbery and that person is six foot ten and they go and they arrest this person and they see that this person is six foot one, even though they have five descriptions, the officers cannot competently go forward and arrest that person and have them incarcerated for 19 months, which is what happened here. You got all these different descriptions, weren't verified, including the height. It's significant if you say the person is six foot one to six foot three and Darren Van Buren is five foot seven without a scar on his head. Well, isn't that really a question here? He's indicated, I believe, on numerous occasions and in different ways that his height is sometimes five, seven, sometimes five, ten. It was never six one. They offered a receipt. There's no evidence or indication that Darren Van Buren ever said he was six one. He's never said he was six one. And we don't know who the author of that receipt is. That was never deposed or never offered. It was just an arbitrary receipt. But Darren Van Buren wasn't the author of that. It was either five, seven to five, nine, but never six one or six three. But again, the appellee said this is a small thing. It is not a small thing. And the question is, irrespective of the appellee wants to make this a trial, this is a summary judgment stage and whether or not reasonable inferences can be drawn or whether or not a reasonable or rational juror could draw the inference that the appellant has put forth, whether or not the factors have been met. And based on what's been presented, there is a reasonable inference that can be drawn that that is the standard from Beaman 1 and Beaman 2. All right. Any further questions? Just one quick question. Mr. Van Buren is not pursuing any claims against Officer Loftus at this point in time, correct? For all intents and purposes, that is correct. Okay. Thank you. All right. Thank you both for your presentations today. The case was well argued and well briefed and it will be taken under advisement. And this concludes our hearing today. Thank you both.